1            UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF OHIO

3                WESTERN DIVISION

4                    - - -

5  UNITED STATES OF AMERICA,      :
                                  :
6            Plaintiff,           : CRIMINAL NO. 1:20-CR-66
                                  :
7     -vs-                        : Sentencing
                                  :
8  RAYMOND ANDREW WILLIAMS,       : Monday, December 11, 2023
                                  : 10:21 a.m.
9            Defendant.           : Cincinnati, Ohio

10                   - - -

11            TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MATTHEW W. MCFARLAND, JUDGE

12                   - - -

13

14  For the Plaintiff:  Timothy D. Oakley
                        Assistant United States Attorney
15                      221 East Fourth Street, Suite 400
                        Cincinnati, Ohio  45202
16

17  For the Defendant:  Ravert J. Clark
                        114 East Eighth Street, Suite 400
18                      Cincinnati, Ohio  45202

19

20

21

22

23  Court Reporter:     Julie A. Wolfer, RMR, RDR, CRR
                        100 East Fifth Street
24                      Cincinnati, Ohio  45202

25                   - - -

Proceedings recorded in stenotype.
Transcript produced using computer-aided transcription.

<u>PROCEEDINGS</u>

1

2          (Courtroom deputy opened court at 10:21 a.m.)

3          THE COURT:  Thank you.  Please be seated.  Good

4    morning, everyone.

5          We're present this morning in case styled <u>United</u>

6    <u>States of America versus Raymond Williams</u>, Case Number

7    20-CR-66.  The matter is set on the Court's docket this morning

8    for a sentencing hearing.

9          Welcome to everyone who's here.  I know there are

10   family and our agents.  I appreciate your presence here today.

11         Mr. Williams, I'm Judge McFarland.  I'm the Judge, as

12   you recall, that's assigned to your case.

13         Today is a very important day to you, and I want to

14   make certain that you understand exactly what's happening this

15   morning.  If at any point you would like to confer with your

16   attorney, Mr. Clark, let me know, and I can certainly make that

17   happen.  Does that sound agreeable to you, sir?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Very well.  At this juncture, I would ask

20   counsel just to identify themselves for the record with the

21   government going first, please.

22         MR. OAKLEY:  Good morning, Your Honor.  Tim Oakley for

23   the United States.

24         THE COURT:  Good morning, Mr. Oakley.

25         MR. CLARK:  Good morning, Your Honor.  Jay Clark for

1   Mr. Williams.

2           THE COURT:  Good morning, Mr. Clark.

3           And Mr. Williams as well.

4           THE DEFENDANT:  Good morning.

5           THE COURT:  Are there any preliminary matters that

6   need to be placed on the record, Mr. Oakley, from the

7   government's perspective?

8           MR. OAKLEY:  No, Your Honor.  Thank you.

9           THE COURT:  Thank you.

10          Mr. Clark, any preliminary matters?

11          MR. CLARK:  Not at this time --

12          THE COURT:  Sure.

13          MR. CLARK:  -- no.

14          THE COURT:  Very well.  So with that, we will begin

15  with our proceedings this morning.

16          First, let me ask you, sir, are you in fact Raymond

17  Williams?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And are you represented by Mr. Clark who's

20  seated with you at counsel table?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And, Mr. Clark, you appear as the attorney

23  of record; is that correct?

24          MR. CLARK:  Yes, Your Honor.

25          THE COURT:  So at a prior time in this matter on April

18th of 2023, Mr. Williams, you pled guilty to Counts 2 through 9 of the superseding indictment. Counts 2 through 8 charge you with distribution of a detectable amount of fentanyl, a Class C felony, in violation of 21 U.S.C. Section 841(a)(1) and (b)(1)(C) and 18 United States Code Section 2. Count 9 charges you with violation -- pardon me -- or possession of a firearm by a prohibited person, a Class C felony, in violation of 18 United States Code Section 922(g)(1), 924(a)(2), and 2.

At that time, we passed the matter for a Presentence Investigation, and that Presentence Report has been completed and filed, and we are here for sentencing. That report was completed on August 3rd of 2023.

I'd like to thank Miss Miller for that excellent report and her work in all of her cases.

As far as it pertains to the Presentence Report, Mr. Oakley, did you receive a copy of that report?

MR. OAKLEY: I have, Your Honor. Thank you.

THE COURT: Mr. Clark, did you receive a copy of that report?

MR. CLARK: Yes, sir.

THE COURT: And, Mr. Williams, did you receive a copy of that report?

THE DEFENDANT: Yes.

THE COURT: Did you have adequate time to review it with your attorney, Mr. Williams?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Very well.  So now I'd like to turn our

3    attention to the factual findings.  Before I can accept that

4    Presentence Report and proceed to address any additional

5    sentencing facts the parties wish to present, I'd like to put

6    on the record the method for determining a sentence in this

7    case.

8          In the 94 districts across the country, Mr. Williams,

9    all the Judges, each must consider certain factors when they

10   fashion a sentence.  He or she must consider factors contained

11   in 18 United States Code Section 3553(a) as well as the

12   advisory Sentencing Guidelines.  The factors that I must

13   consider under that statute include the following,

14   Mr. Williams.

15         I must consider the nature and circumstances of this

16   offense and the history and characteristics of you and your

17   life as detailed in the Presentence Report.  I must consider

18   the need for the sentence to reflect the seriousness of the

19   offense, promote respect for the law, and provide just

20   punishment for the offense.  In doing so, I must afford

21   adequate deterrence for your future criminal conduct as well as

22   for others in the community.  I must protect the community from

23   future crimes of you and provide you with any needed

24   educational, vocational care, vocational training, medical

25   care, or other correctional treatment.  Third, I must consider

the kinds of sentences available.  Fourth, I must consider the kinds of sentences the advisory guidelines provide.  Fifth, I must consider any pertinent policy statements.  Sixth, I must consider the need to avoid unwarranted sentence disparities among defendants similarly situated like yourself.  And, lastly, seventh, I must consider restitution.

The parties have not raised any objections to the factual statements contained in the Presentence Report, and, thus, there will be no objections to the factual statements.

The Court would adopt those factual statements in the Presentence Report as its finding of fact.  I recognize there is a question as to the four-point enhancement which we can address here just momentarily.

In this case, Mr. Williams, you did plead guilty, as I stated, to those previous offenses.  The potential penalty for violating Section 21 U.S.C. 841(a)(1), (b)(1)(C), and 2 is a Class C felony which subjects you to a maximum of up to 20 years imprisonment on each count, at least three years of supervised release, a fine of up to one million dollars, and a mandatory special assessment of $100 in each count.

For the 922(g)(1) and 924(a)(2) and 2 offense, the potential penalty is a maximum of up to ten years imprisonment, up to three years of supervised release, a $250,000 fine, forfeiture, and a mandatory special assessment of $100.

The Court has received e-mail correspondence from

1    Mr. Clark pertaining to one objection, and the Court can

2    address that at this point.

3         Mr. Clark, would you like to annunciate your objection

4    for the record at this time?

5         MR. CLARK:  Your Honor, I think it's not necessarily

6    an objection as it is more a request for a variance given the

7    nature of the facts.

8         What the issue is is with respect to the four-point

9    enhancement that is in paragraph -- I'll call it with 59 and

10   60, the short version, the possession of a firearm with an

11   obliterated serial number.  It's not really an objection

12   because technically Raymond had that gun, but I think in terms

13   of a variance, there is a story behind why he had it that I

14   will let him articulate for the Court that I think is somewhat

15   mitigating in terms of a total four-point enhancement.  He's

16   not denying he possessed the other guns.

17        I think when he was arrested, he was interviewed.  He

18   readily admitted to the police officers his possession of those

19   other guns.  I went back and looked at the interview over the

20   weekend.  But it's this one that he thinks it would help you to

21   have some understanding behind why he had the gun.  So when the

22   Court's ready, I would let him explain that to you.

23        THE COURT:  Sure.  Thank you, Mr. Clark.

24        Mr. Oakley, do you have any statement for the record

25   in this regard?

1      MR. OAKLEY:  Your Honor, we would wait until we hear

2  from Mr. Williams.

3      THE COURT:  Very well.  Mr. Williams, would you like

4  to make any statement in that regard?  Please do so.

5      THE DEFENDANT:  Well, good morning.

6      THE COURT:  Good morning.

7      THE DEFENDANT:  I didn't -- we did have the gun in our

8  possession.  My neighbor which is Tyrone, he was serving -- he

9  had to go do like 70 days for child support, and his son had

10  went through his things.  His son had found the gun, and he was

11  in the backyard playing with the gun, playing basketball, and

12  the gun fell on the ground.

13      MR. CLARK:  How old is his son?

14      THE DEFENDANT:  Well, about 15, he's about 15 years

15  old.  And the gun fell on the ground, and we asked him what was

16  that, was it a BB gun or anything, because we were missing a BB

17  gun from our house.  So we asked him what was that.  It took

18  about five, ten minutes, and he finally said, "It's my dad gun;

19  I found it when I was going through his things."  So me

20  personally took the gun from him and had the gun put in the

21  safe.  That's why the gun was by itself in the safe and not

22  with the other guns.

23      When I was sitting in Cleveland, I know a kid named

24  R.J., R.J. Dudley, real name was Reginald Dudley, he got killed

25  when he was 13 by his cousin playing -- playing with a firearm.

1    That's one instance.  I know another, another person, my cousin

2    McHenry Crawford, who shot my other cousin by mistake playing

3    with a gun when he was a kid.

4         So, you know, as an adult, we must, you know, look

5    after the kids and my kids and the kids that's around my kids

6    for their safety.  And I took the gun and put the gun in the

7    safe, I'm saying, so it's locked away so the father could

8    possess his gun once he returned home.  That's the only reason

9    why that gun was in our possession.

10        THE COURT:  Okay.  Thank you very much.  I really

11   appreciate you telling me that, Mr. Williams.

12        Mr. Oakley, any response?

13        MR. OAKLEY:  Your Honor, we would just note that I

14   believe the application is appropriate.  He did possess the

15   firearm.  I don't think there's any question that this serial

16   number was obliterated, at least in part, where the numbers

17   could not be read, so I think it's appropriate.

18        THE COURT:  Thank you, Mr. Oakley.

19        Mr. Clark, any final comment?

20        MR. CLARK:  No, Judge.  I think that maybe some degree

21   of enhancement might be in order, obviously, but I think

22   understanding the background, especially in light of where the

23   other guns were recovered, this one was treated differently.

24   So I think that's why it was important for Ray just to tell you

25   that story.

1          THE COURT:  I very much appreciate it, Mr. Williams.

2          As far as the Presentence Report, it is calculated

3   correctly in the sense that you did possess that firearm.

4   However, I am going to note that and take it into account in

5   the final sentence that I impose.

6          THE DEFENDANT:  Thank you.

7          THE COURT:  You're welcome.

8          Is there anything else in that regard you wanted to

9   raise, Mr. Clark?

10         MR. CLARK:  Nothing, Judge.

11         THE COURT:  Very well.  So let's turn our attention

12  now, Mr. Williams, to the Sentencing Guidelines, and I'd like

13  to talk a little bit about those.  I've got to go through some

14  figures just for the record.

15         So as I've stated, you have pled guilty to multiple

16  counts involving a detectable amount of fentanyl as well as

17  possession of a firearm by a prohibited person.

18         In accordance with Title 18 U.S.C. Section 3553(a) --

19  (c), the Court places on the record the following statement of

20  reasons.

21         In this case, Mr. Williams, the Sentencing Guidelines

22  is the 2021 edition.

23         As noted, you have been convicted of multiple counts,

24  and the multiple count group ruling applies.  Consistent with

25  Section 3D1.1(a)(1) of the United States Sentencing Guidelines,

when a defendant has been convicted of more than one count, the

Court shall group the counts resulting into a distinct group of

closely related counts by applying the rules of Section 3D1.2

of the Sentencing Guidelines.

In this case, Mr. Williams, Counts 2 through 8, the

drug counts, are grouped with Count 9, the firearm count, for

guideline calculation purposes because they embody conduct that

is treated as a specific offense characteristic, or other

adjustment to, the guidelines applicable to Count 9, pursuant

to Section 3D1.2(c) of the guidelines.

According to Section 3D1.3, in the case of counts

grouped together, the offense level applicable to a group is

the offense level determined in accordance with Chapter Two and

Parts A, B, and C of Chapter Three for the most serious of the

counts compromising this group.  In this case, Counts 2 through

8 are governed by Section 2D1.1, and Count 9 is governed by

2K2.1 of the Sentencing Guidelines.  The gun guideline for

Count 9 produces the highest offense level; therefore, it is

being used for guideline purposes calculations.

Pursuant to Section 2K2.1(a)(4), the base offense

level is 20 if the offense involved a semiautomatic firearm

that is capable of accepting a large-capacity magazine and the

defendant was a prohibited person at the time committing the

instant offense.  During a search of your residence, a Hi-Point

rifle with a large-capacity magazine was seized.  You were a

1   prohibited person at the time that you committed this offense,

2   as you were convicted of trafficking in drugs, an F4, in

3   Cuyahoga County Court of Common Pleas, Cuyahoga County, Ohio,

4   Docket Number CR04447198.  Thus, your base offense level is at

5   20.

6         If the offense involved three to seven firearms, the

7   offense is increased by two levels pursuant to Section

8   2K2.1(b)(1).  Here, this offense involved six firearms.  The

9   offense level, therefore, is increased by two levels.

10        If any of the firearms had been altered or obliterated

11   a serial number, the offense level is increased by four levels

12   pursuant to Section 2K2.1(b)(4).  And, here, the Taurus firearm

13   possessed by you did have an obliterated serial number, so the

14   offense level is increased by four levels.  I would footnote

15   the conversation that we just previously had, and I will take

16   that into account in my final calculation of a sentence.

17        According to Section 2K2.1(b)(6), if the defendant

18   used or possessed any firearm or ammunition in connection with

19   another felony, the offense level is increased by four levels.

20   Pursuant to Section 2K2.1, Application Note 14(C), "another

21   felony offense" means any federal, state, or local offense

22   other than the explosive or firearm possession or trafficking

23   offense punishable by imprisonment for a term exceeding one

24   year, regardless of whether a criminal charge was brought or a

25   conviction was obtained.

In this case, Mr. Williams possessed multiple firearms in a stash house and on his person. The firearms in the residence were located near the drugs, and Mr. Williams was observed by law enforcement officers leaving the Le Mar residence on multiple occasions to meet with a confidential informant for controlled buy purchases. He pled to a multiple-count felony distribution of fentanyl offenses which are punishable for imprisonment of a term exceeding one year.

Additionally, Mr. Williams tampered with evidence, which he discarded a firearm out of his vehicle while fleeing from law enforcement. Mr. Williams was charged with tampering with evidence, an F4, failure to comply with an order or signal of a police officer, an F5, in Hamilton County Common Pleas Court, Docket Number B2000876 in Hamilton County, Ohio. Therefore, the four-level enhancement is applicable.

Pursuant to Section 3C1.1, if the defendant willingly obstructed or impeded or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing for the instant offense of conviction, the offense -- the obstructive conduct related to the defendant's offense of conviction and any related relevant conduct, the offense level is increased by two levels. Here, Mr. Williams' behavior was not sufficient to receive this enhancement. As such, the adjusted offense level is now at 30.

Commendable to you, Mr. Williams, you have accepted

1    responsibility for this offense, and, as such, your offense

2    level is decreased by two levels under 3E1.1(a).

3            And also commendable to you, Mr. Williams, you did

4    assist authorities in the investigation and prosecution of your

5    own misconduct by notifying the authorities of your intention

6    to enter a guilty plea to these offenses.  As such, your level

7    is decreased by one level.

8            Therefore, your total offense level now sits at 27.

9            Your total criminal history score is at seven.

10   According to the Sentencing Table in Chapter Five, Part A, a

11   criminal history score of seven establishes a criminal category

12   of IV.

13           Now let's turn our attention to the recommended

14   guideline ranges provided by the federal advisory guidelines.

15           Based on a total offense level of 27 and a criminal

16   history score of IV, the guideline imprisonment range is 100

17   months to 125 months.  This range falls in Zone D of the

18   Sentencing Table.  Section 5C1.1(f) provides that if the

19   applicable zone is in Zone D of the Sentencing Table, the

20   minimum term shall be satisfied by a sentence of imprisonment.

21           For Counts 2 through 8, the guideline term of

22   supervised release is at least three years.

23           As for Count 9, since the offense is a Class C felony,

24   the guideline is a term of at least one year of supervised

25   release but not more than three years.

1    And since the guideline range is in Zone D of the

2 Sentencing Table, you are ineligible for probation,

3 Mr. Williams.

4    The fine ranges in these offenses from 25,000 to one

5 million dollars.  And if you were convicted under a statute

6 authorizing a maximum fine greater than $500,000, or a fine for

7 each day of the violation, the Court may impose a fine up to

8 the maximum authorized by statute.

9    As for Counts 2 through 8, when sentencing a defendant

10 convicted of an offense under 21 United States Code Section 841

11 in which there is no identifiable victim, the Court may order

12 restitution based on the amount of public harm caused by the

13 offense as determined by the Court in accordance with the

14 United States Sentencing Guidelines.  In no case, however,

15 shall the amount of restitution exceed the amount of the fine

16 which may be ordered by the offense.

17    And restitution is not applicable to Count 9.

18    Pursuant to Section 21 United States Code Section 862,

19 the Court can deny the eligibility for certain federal benefits

20 of an individual convicted of distribution or possession of a

21 controlled substance.  In this case, Mr. Williams, having been

22 convicted of a third and subsequent drug distribution offense,

23 you would be permanently ineligible for federal benefits

24 pursuant to United States Code Title 21 U.S.C. Section

25 862(a)(1)(C).

1      There is a mandatory special assessment of $100 per

2    count which total $800 in this case, and those would be

3    mandatory.

4           The plea agreement in this case considers all the

5    relevant conduct in this case.

6           I would note Mr. Williams did not plead to a drug

7    death which would have resulted in a higher guidelines.

8           The plea agreement does not contain any sentencing

9    recommendations and, therefore, has no further impact on the

10   case.

11          Now turning our attention, Mr. Williams, to the

12   factors that I mentioned to you when we started our hearing

13   today under 18 United States Code Section 3553(a).  These are

14   factors that every Judge in the 94 District Courts across the

15   country must consider.

16          The first factor that I must consider is the nature

17   and circumstances of this offense and the history and

18   characteristics of you, Mr. Williams.

19          As you know, this is a very serious offense.  You

20   distributed 2.845 grams of fentanyl and .454 grams of heroin in

21   the Southern District of Ohio in 2019 and 2020.  On February

22   12th of 2020, five firearms were located at your residence or

23   on your person.  An additional firearm was located on November

24   19th of 2020, and you were a prohibited person from possessing

25   these firearms because of a prior felony conviction.

1     The history and characteristics of you revealed that
2 you were primarily raised by your mother and that you did have
3 a difficult childhood and lived -- and grew up in a dangerous
4 area.  You have two maternal half-brothers and one paternal
5 half-brother, and you are engaged to Shawnda Gaston who has two
6 juvenile sons.  You have one adult daughter and one juvenile
7 son at this time.  Your future plans are that you would like to
8 return to Atlanta to live with Mr. Gaston when you are
9 released.  I asked Mr. Clark in chambers this morning what else
10 you would like to do, and he indicated that you would like to
11 get your CDL at some point and pursue a profession in truck
12 driving.
13     As far as your personal physical characteristics, you
14 do suffer from knee pain and high blood pressure.  It was
15 revealed that you did have a heart attack in 2018 and you have
16 received ongoing treatment and medications for these issues.
17 You would like to participate in a mental health program.  It
18 is noted that you have illegally used alcohol and marijuana,
19 ecstasy, cocaine, heroin, Percocet, Vicodin, and tramadol.
20     As far as your education, you did graduate from John
21 Kennedy High School in 2003.
22     Your employment history reveals that you have worked
23 at a variety of places, including factories, retail stores, and
24 at a barber shop.  You also owned your own business, Curbside
25 Power Washing and Detailing, in 2018.

1    However, over the past two decades, you have

2 accumulated a wide-ranging criminal history, including for drug

3 and firearm offenses.

4    Section (a)(2) of the statute, Mr. Williams, requires

5 me to consider the need for the sentence to reflect the

6 seriousness of the offense, promote respect for the law,

7 provide just punishment.  I must afford adequate deterrence to

8 you specifically and generally to others for criminal conduct.

9 I must prevent future crimes of you, Mr. Williams.  And I also

10 must provide you with any needed educational, vocational

11 training, and medical care, correctional treatment.

12    As you know, this is a very serious offense and you

13 are looking at a significant amount of incarceration time.  Any

14 sentence that I impose must respect -- promote respect for the

15 law and hold you accountable for your conduct, Mr. Williams.

16    The movement of fentanyl is concerning across the

17 country.  There are a number of individuals that have died from

18 this. I had a case last year where two individuals used this

19 drug and one was a very young girl for the first time; she

20 passed away.  This type of conduct is devastating to those

21 families, as I know it would be devastating to someone in your

22 family.

23    Your conduct is more alarming in this case because of

24 the illegal firearms that you were possessed.  Deterrence is a

25 heavy weight that must be imposed as far as your conduct is

1    concerned and your extensive criminal history.

2    Section (3) requires, Mr. Williams, for me to consider

3    the kinds of sentences that are available, the kinds of

4    sentences and sentencing ranges provided by the guidelines.  I

5    must also consider any pertinent policy statements consistent

6    with an offense level of 27 and a criminal history category of

7    IV.

8    As I previously stated, your recommended range is

9    between 100 and 125 months in Zone D.  The minimum term shall

10   be satisfied by a sentence of imprisonment pursuant to Section

11   5C1.1(f) of the Sentencing Guidelines.

12   (a)(6) requires me to be mindful of unwarranted

13   sentencing disparities among defendants similarly situated like

14   yourself, Mr. Williams.  Here, the Court finds that the

15   sentence that I pronounce momentarily is within the ranges of

16   sentences imposed when defendants with similar records found

17   guilty of similar conduct.

18   I would note that there is no restitution at this

19   time.

20   After all that being said, Mr. Oakley, I would ask do

21   you have any questions about the statutory provisions at play

22   in the punishment of this case or the suggested guidelines?

23   MR. OAKLEY:  No, sir.  Thank you.

24   THE COURT:  Thank you, Mr. Oakley.

25   Mr. Clark, do you have any questions about the

1   statutory provisions at play at this time or any questions

2   about the imposition of punishment in this case?

3           MR. CLARK:  No, Judge.

4           THE COURT:  Thank you.

5           Mr. Williams, that was a lot of information that I

6   went over, and I had to do that for the record.  Do you have

7   any questions about anything I have mentioned?

8           THE DEFENDANT:  No, sir.

9           THE COURT:  Very well.  We are now at the time of the

10  proceedings where anyone can offer any statement in regards to

11  sentence or mitigation of sentence or aggravation of sentence.

12          I'm going to begin with Mr. Oakley, if he has anything

13  he would like to say.  Mr. Clark will have the same opportunity

14  as well as you, Mr. Williams.  And any guests that you have

15  today, you can speak as well.

16          Mr. Oakley.

17          MR. OAKLEY:  No, Your Honor.  We filed a sentencing

18  memorandum, and we would add nothing to that.

19          THE COURT:  Thank you, Mr. Oakley.  I appreciate you

20  filing that sentencing memorandum.  It was very helpful.

21          Mr. Clark, is there anything you would like to offer

22  at this time?

23          MR. CLARK:  Your Honor, there are several family

24  members here that would like to speak on Ray's behalf, and I

25  would ask that the Court hear from them, the first being his

1    father, Ray Williams, Sr.

2              THE COURT:  Yes, sir.

3              Good morning, sir.  If you could just speak into the

4    microphone, if you would state your name first.  Miss Julie is

5    recording everything that we're saying, so thank you.

6              MR. WILLIAMS, SR.:  Good morning, Your Honor.

7              THE COURT:  Good morning.

8              MR. WILLIAMS, SR.:  My name is Raymond Williams, Sr.

9              THE COURT:  Nice to meet you.

10             MR. WILLIAMS, SR.:  Thank you, Your Honor.

11             I just can't sit up here and say that -- for one

12   thing, I'm going to say I'm sorry for the actions that my son

13   has done.  I -- I know that, you know, what he did was not the

14   right thing, you know, Your Honor.  And I didn't try to raise

15   him up that way, you know, and I -- but when a person get

16   grown, they sometimes think they know more than anybody else.

17             But he's not a bad young man, Your Honor, and he's

18   very caring and understanding, and I love him very much, Your

19   Honor.

20             I hope that really deep down inside you really do have

21   to do what's right for the citizens of the United States and I

22   understand that.  But I just ask really deep down inside if you

23   can just consider your heart deeply, look deep down inside your

24   heart and feel some compassion for him.  You do have to do what

25   you have to do, Your Honor.  And he's a young man and he -- he,

1    you know, he done something wrong and he has to stand up for

2    it.

3          But I just pray and ask that you can, you know, put it

4    in your heart to, you know, give him some leniency, you know,

5    to be able to get back out, you know, and do the right thing in

6    life.  That's the only thing I ask.  You know, I pray and ask

7    all these things in the name of Jesus Christ.  Amen.

8          THE COURT:  Thank you, Mr. Williams.  I also

9    appreciate the letter that you wrote, that you provided me.  I

10   appreciate that very much.

11         MR. WILLIAMS, SR.:  Thank you.

12         MR. CLARK:  Judge, the next would be his son, Raymond

13   Williams also.  Well, not also, but Raymond Williams, III.

14         Can I have just a second?

15         THE COURT:  Of course.

16         MR. OAKLEY:  Can I talk to Miss Fields for just a

17   second?

18         THE COURT:  Of course, yes.  We'll take a brief

19   recess.  You can cue the music.

20      (Off-the-record discussion.)

21         THE COURT:  Go ahead.  State your name for the record,

22   please.

23         MR. WILLIAMS, III:  My name Raymond Williams, III.

24   I'm the son of Raymond Williams, Jr.

25         I miss my Pops a lot.  I really do.  I don't think I

1   have seen him in person since 2018.  That's kind of hard on me.

2   I feel like I need him.

3          I was working with him doing the car detailing.  It's

4   pretty fun.  I was helping him make money.  I can't do it

5   without him.  Like, if you can, I want him around.

6          Thank you.

7          THE COURT:  Thank you, Mr. Williams.

8          MR. CLARK:  Judge, and then finally, his stepmother,

9   Robin Williams.

10         THE COURT:  Sure.  Good morning.

11         MS. WILLIAMS:  Good morning.  My name is Robin James

12  Williams.

13         I've never done this before, but, you know, he is like

14  a son to me.  I've partially seen him grow up, basically seen

15  his children grow up.  I did see them.  And he's a excellent

16  father.  And just like what you mentioned earlier about his

17  childhood, so help me, if I had've been his real mother, he

18  wouldn't be here.  His real father loves him to death, don't

19  get me wrong.  But he's a very good young man and he's a

20  excellent father.  And I haven't seen him since 2018 either.

21         THE COURT:  Well, thank you very much for your

22  statements.

23         MR. CLARK:  Your Honor, in terms of witnesses, that's

24  it.

25         THE COURT:  Very well.  Thank you, Mr. Clark.  Is

1    there anything you wanted to offer in mitigation of sentence on

2    behalf of your client?

3         MR. CLARK:  Judge, factoring in what we talked about

4    with respect to the firearm with the obliterated number, I'd

5    ask the Court to consider that as a basis for a variance

6    downward.

7         I think another factor is that Ray has been locked up

8    just over 36, almost 37 months now, all of it at the Butler

9    County Jail which is -- that location has its established

10   history and conditions.  So I would ask the Court to factor

11   that in.

12        And then the third thing I would ask the Court to

13   consider, he got a two-level -- a four-level enhancement for

14   tampering with evidence.  And I know the charge doesn't have to

15   even be filed, but in this case that was what originally got

16   Raymond arrested along with a couple of other drug-related

17   offenses.  And when he was arrested on those, he served 30 days

18   in Hamilton County Justice Center before he bonded out.  And I

19   know the Court's aware of the difficulty in getting the Bureau

20   of Prisons to recognize that time, but it is conduct that is in

21   part being held against him here for sentencing and is part and

22   parcel of the underlying offense.  So I would ask the Court to

23   vary down from the low range of a hundred months to

24   approximately 80, factoring in the issue with the firearm, the

25   time that he's been incarcerated at the Butler County Jail, and

giving him some acknowledgment for credit for the 30 days he did before that.

I think when you look at the 3553(a) factors, 80 months is a substantial sentence but it is not more than necessary to accomplish the purposes of 3553(a) and sentencing.

THE COURT:  Thank you, Mr. Clark.  Well done.

Mr. Williams, is there anything you would like to say?  Go right ahead.

THE DEFENDANT:  First, I'd like to apologize to the Court, to the officers, to my family for having this, this court hearing this morning.

I have made some questionable decisions in my life.  And as I was getting older, and it's 2017, 2016 I started to find myself, you know.  As being a father, you know, tried to start a business and have my kids work with me, teach them, you know, not to go down the path that I went down.  And just as much as I was teaching them, they was teaching me.  I -- I -- I -- I was coming along to learn how to be an adult.

Yes, I did make some mistakes.  Yes, I did have the firearms.  The firearm wasn't for me to go out and commit crime with or hurt anybody.  Them firearms was for me to protect my family and my children.  You know, we were working in a rural area in Price Hill.  Price Hill is a dangerous area.  And people was coming and messing with my kids, they were selling waters or washing cars, and they would start to demand money

and said if we don't pay, we know where you all stay at.

So and I understand you might say, well, why didn't you call the police. But if I don't have a name or anything to give a police officer, there's nothing they can do. So, yes, I did go out and purchase firearms and I'm wrong for that. But as a man, as a father, I was just trying to protect, protect my household and protect my family.

And like I say, I have made some questionable mistakes, some I wish I could take back. But like I was coming to finding myself as a individual and as a father, and I've been gone three years. I've missed my daughter go to college and her fraternity. My son about to graduate; I'm gonna miss that. I done missed a lot. My -- my -- and that's nobody's fault but mine and I take full responsibility of it.

And I just I hope that you can have some kind of leniency on me. And I don't -- I want this to be the last time I'm ever in anybody courtroom dealing with any kind of this situation. Every time I have gotten in trouble, I try to better myself, but I found the way, you know what I'm saying, to still go back down that road.

In 2010, I went to school to be a electrician. That didn't work out for me. I got shocked. I felt that that wasn't good. In 2012 when I came home from that situation, I went to barber's college. I graduated barber college, got my license. I always try to better myself in a situation to where

I didn't want to come back to prison.  But here I am again, you know, and I'm not gonna use all that's gone.

My health, you know, but my knee went out.  It's hard to work.  You know, I fell.  I had surgery on my hand.  I got pins in my hand, you know, and they put me to sleep.  And once you go to sleep, that's a scary feeling.  And I supposed to go have surgery again on my knee, but I didn't do it.  I prolonged it because I didn't want to be put to sleep again.

So, you know, I made -- I made some questionable decisions and I have, but I try to better myself every time I got myself in a situation because I knew this is not what I wanted for myself.  It's not.  I messed up, and I apologize to the officers here, to my family and my kids for missing out on them, you know.

I'm sorry.  I'm sorry.  I just hope you have some kind of leniency on me this morning.

THE COURT:  Thank you, Mr. Williams.  I appreciate those comments.

Mr. Oakley, any rebuttal or anything you would like to offer?

MR. OAKLEY:  Your Honor, I would just note for the record I heard Mr. Williams speak, but he also was found with a bulletproof vest, multiple handguns inside the -- inside the house.  I know that he spoke to you about the Taurus being in the safe and he found it, but they also found ammunition that

1    fit that weapon in another room, 26 rounds.  So we're

2    comfortable with our recommendation.

3        I know that I understand what Mr. -- Mr. Clark has

4    said and what Mr. Williams has said.  We would ask the Court to

5    sentence -- we think the guidelines are appropriate.  We would

6    ask the Court to sentence in an area near -- near those.

7        THE COURT:  Thank you, Mr. Oakley.

8        Miss Miller, is there anything you would like to say

9    following up on your excellent report?

10       PROBATION OFFICER MILLER:  No, Your Honor.  Thank you.

11       THE COURT:  Any of our agents here today like to say

12   anything this morning?

13       UNIDENTIFIED SPEAKER:  No, Your Honor.

14       UNIDENTIFIED SPEAKER:  No, Your Honor.

15       THE COURT:  Very well.  Mr. Clark, I'll give you the

16   last word.  Is there anything you wanted to say before sentence

17   is imposed?

18       MR. CLARK:  Nothing with regards to the imposition of

19   sentence, Judge.

20       THE COURT:  Is there any recommended facility that you

21   would recommend, Mr. Clark?

22       MR. CLARK:  Judge, you heard Mr. Williams talk about

23   and it's mentioned in the Presentence Report his different

24   medical conditions.  I would ask the Court to recommend that

25   whatever sentence you impose be served at a medical facility as

1    close as BOP policy would allow to Atlanta, Georgia.

2              THE COURT:  Thank you.

3              MR. CLARK:  Atlanta is where most all of his family is

4    concentrated, in that area.

5              THE COURT:  Thank you, Mr. Clark.

6              Mr. Williams, any final words you'd like to say?

7              THE DEFENDANT:  Well, I just apologize to everybody

8    once again.

9              I hope the Court would have leniency on me.

10             THE COURT:  Well, thank all of you for your statements

11   here today.  The family members that are present, it's

12   important that you have family support.

13             To the agents, for your work, it's excellent work.  I

14   appreciate what you do and the risks that you put yourself in

15   to do the service to our community and our country.  Thank you.

16             Thanks to the counselors who have resolved this case

17   through a plea.

18             It is the duty of the Court to impose sentence,

19   Mr. Williams, and counsel will have a final chance to make an

20   objection to the sentence that I impose.

21             I would tell you, Mr. Williams, this is now closing in

22   on my twenty-fourth year on the bench.  I spent a significant

23   amount of time in the state court system.  I've seen a lot of

24   individuals come into courtrooms, in this courtroom and in

25   others, and the part of the sentencing is probably the most

1　difficult part of my life when you have to impose a sentence to

2　someone that certainly has messed up.

3　　　　You had multiple occasions to correct misbehavior, and

4　it seems like you brought yourself right back to here to be in

5　federal court.  Those are choices that you make.  You have

6　clearly a loving family.  You have children that are dependent

7　upon you, and, yet, you make poor decisions that affect the

8　outcomes of those individuals.  We can't take those back.  You

9　can't take those back.

10　　　　You have, it appears to me, accepted responsibility

11　for this conduct, and you certainly do appear remorseful.

12　　　　Mr. Clark and Mr. Oakley and I were discussing your

13　case in chambers this morning.  Mr. Clark indicated, and I

14　would agree, you are a very smart individual.  You have a

15　capacity to do good.  You have a capacity to make smart

16　decisions.  There's no doubt that you are articulate.  I've

17　seen that here today and I've seen it throughout this case.

18　And maybe that's part of the charm that you have in the illegal

19　world that has brought notoriety to you for these conduct

20　that's brought you here today.  But that same charm and conduct

21　could be used for the good of the community, for the good to

22　support your family, for the good to change communities.

23　Mr. Clark has indicated and I do agree that you have the

24　ability to do those things.

25　　　　Everyone in this room has made mistakes.  I'm not far

from that.  My father would say to me, as I'm sure your father said to you, when I was growing up when I made mistakes, after the appropriate punishment was imposed, he would ask me, "Did you learn anything," and then I would have to articulate what I learned.  So I would ask you, what have you learned from this process?

THE DEFENDANT:  This is -- this has been -- as you get older, you know, I just turned 39 yesterday, so as you get older, you start to realize the finer things in life as your children, your family, you know.  When you miss -- you're missing your family so much and what's going on in the community, you know.  I did some wrong and I know that's not the path I wanted to go down.  I learned a great deal from this, you know.

I read a lot of self-help books.  I learned myself, you know, saying like the dos and don'ts that I don't want to condone this.  This is not where I want to be at.  This is not ideal for anybody.

You know, there is -- there are steps that you got to take, you know.  Even -- I want to protect my family, but there's steps I got to take, you got to do it the right way.  As much as you want to do it your way, as much as you want to be that protector at your household, you still have to do it, there's rules, and I understand.

I'm not young.  I'm getting older, my family is

1    getting older.  My grandmother is 94 -- 93 years old.  She

2    might not be around when I get out of here.  I'm going to miss

3    a lot.  My family's been tore apart right now because I did

4    that.

5            THE COURT:  Well, thank you, Mr. Williams.

6            So to begin with, the Court is going to accept the

7    plea agreement that the parties engaged in and I would accept

8    that.  As you know, the plea agreement did not recommend a

9    joint sentence.  So it's up to the Court to impose sentence,

10   and I'm prepared to do that at this time.

11           Based on the Sentencing Reform Act of 1984 and after

12   considering the factors of 18 United States Code Section

13   3553(a) and after duly considering those factors, Mr. Williams,

14   the Court could choose to send you away -- the Court could send

15   you away essentially for the rest of your life.  You've got

16   multiple counts.  You've got serious counts.  This is your

17   third drug conviction.  So the Court could impose a very heavy

18   penalty imposed on you today.  But after considering everything

19   that I'm supposed to consider and the arguments of counsel,

20   both here in the courtroom and in chambers, I'm going to show

21   you some mercy today, and I hope that I'm not mistaken in doing

22   that.

23           If I show you mercy, will you give me your word that

24   you'll turn away from this life that you've chosen?

25           THE DEFENDANT:  Yes.  It's over.

1    THE COURT:  I want you to remember this conversation

2    the next time you're at a crossroads, okay?

3    THE DEFENDANT:  Yes, sir.

4    THE COURT:  So it is the sentence of this Court that

5    Raymond Andrew Williams is hereby committed to the custody of

6    the United States Bureau of Prisons to be imprisoned in Counts

7    2 through 8 for a period of 95 months, and for Count 9 to be

8    imprisoned for a period of 95 months, both to serve

9    concurrently with each other.  And I'm giving you credit of

10   almost three years of time that you've served in the Butler

11   County Jail.

12   I originally was going to impose 96 months, but I'm

13   giving you credit for the 30 days that Mr. Clark had

14   articulated because I'm not certain that the Bureau of Prisons

15   would give you that.  So that's accounting for the 95 months.

16   I will recommend to the Bureau of Prisons that you

17   serve this time at a facility medical in nature as close to

18   Atlanta as possible.  Please understand, Mr. Williams, I don't

19   control the Bureau of Prisons.  I wish I could, but I don't, so

20   it's completely up to them.

21   I considered your case very much and I've thought

22   about this case for a while, as I know you've been incarcerated

23   at the Butler County Jail.  I've considered the factors that

24   I'm required to do so.  There is a strong need to stop the

25   fentanyl coming into the community and in our state.  There is

a strong need to protect individuals from illegally obtaining this, from illegally obtaining firearms during the commission of these offenses. And I hope the sentence sends a message to others to consider not doing it.

You did have a difficult childhood; there is no doubt. However, this is not your first criminal offense for a drug offense, and there needs to be specific deterrence to you and to others.

I believe the sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment, and I hope it deters you and others.

I believe this sentence, while showing mercy, is sufficient but not greater than necessary to satisfy the sentences of -- the purposes of sentencing and the goals that I'm required to do so.

I'm going to recommend, Mr. Williams, while you're incarcerated that you participate in some apprentice training programs, and I would encourage you to keep your eyes open and think about other opportunities. I know you want to be a truck driver, but look at other opportunities for yourself.

I want you to also participate in substance abuse and mental health training, and I would recommend the RDAP program for you.

As it pertains to supervised release, Mr. Williams, I am going to impose three years of supervised release from

1    Counts 2 to 8 and three years on Count 9, again, to be served

2    consec -- concurrently.

3         And within 72 hours of your release from prison, you

4    must report to the Probation Department in your district.

5         While you're on supervision, Mr. Williams, you cannot

6    commit any federal, local, or state crimes.  I would tell you

7    at this point if you're back in front of me or any other

8    federal judge, it will be unlikely that you will be given the

9    mercy that you're given today.  So be mindful of that.

10        You are again prohibited from possessing a firearm,

11   ammunition, destructive device, or dangerous weapon, and you

12   must not unlawfully possess a controlled substance.  I

13   recognize you have I think taken lisinopril for your blood

14   pressure.  If you have a prescription, that's okay, but you

15   can't possess any type of other controlled substance.

16        You must submit to a drug test within 15 days after

17   release from imprisonment and at least as many as necessary

18   from the Probation Department.

19        You must also cooperate with the collection of DNA as

20   directed by your probation officer as well as the other special

21   conditions adopted by this Court, including the following.

22        Mr. Williams, you will participate in a program of

23   testing, treatment, and/or medical compliance for alcohol and

24   controlled substances as prescribed by your Probation

25   Department until you are released from your supervised release.

You will make payments towards this based on your ability to pay.

pay.

You must also participate in a program for mental health assessment counseling as directed by your Probation Office officer and pay according to your ability to pay.

You must also provide any financial information requested by your probation officer.

And you are subject to the forfeiture of the property as outlined in your plea agreement.

I do not believe a fine is appropriate in this case and I'm not going to impose one.

And restitution is not applicable.

However, you will be ordered to pay a special assessment of $100 for each count in this case which I believe collectively is $800.

Mr. Clark, do you have any objections as to why the sentence should not be imposed or anything that you believe I have omitted that needs to be corrected?

MR. CLARK:  No, Judge.

THE COURT:  Thank you.

Mr. Oakley, do you have any objections as to why this sentence should not be imposed or anything that I have omitted that you believe needs to be corrected?

MR. OAKLEY:  Nothing, Your Honor.

THE COURT:  Thank you.

1    Mr. Williams, do you have any objections to this

2 sentence or anything that you have questions about?

3    THE DEFENDANT:  No, sir.

4    THE COURT:  Then the sentence is thus imposed as I've

5 previously stated.

6    Now, Mr. Williams, I need to advise you of your

7 appellate rights.

8    You have the right to appeal my sentence in some

9 circumstances.  However, I would note in your plea agreement

10 that you signed with the United States, in paragraph ten you

11 waived your right to appeal my sentence.  If you believe the

12 waiver is ineffective, you can present that theory to the Sixth

13 Circuit Court of Appeals.  However, you must do so within 14

14 days of the filing of this judgment pursuant to Rule 4(b) of

15 the Appellate Rules of Procedure.

16    I would also advise you, Mr. Williams, you need to

17 keep the United States Attorney's Office and your Probation

18 Department up to speed of your mailing and current address when

19 you are released.

20    If you would like to present that theory to the Sixth

21 Circuit, you must do so, again, within 14 days of this

22 judgment.

23    Do you have any questions about your appellate rights,

24 Mr. Williams?

25    THE DEFENDANT:  No, sir.

1        THE COURT:  At this time, Mr. Williams, I'm going to

2  remand you back to the United States Marshals for custody

3  pending transportation to the Bureau of Prisons.

4        Are there any additional objections that have not been

5  previously raised, Mr. Oakley, that need to be raised at this

6  juncture?

7        MR. OAKLEY:  No, Your Honor.  Thank you.

8        THE COURT:  Mr. Clark, any previous objections that

9  have not been raised?

10        MR. CLARK:  Nothing, Judge.

11        THE COURT:  Mr. Williams, do you have anything finally

12  you would like to say to me before we adjourn?

13        THE DEFENDANT:  I just thank you for the leniency.

14  And once again, I apologize to everybody for this matter.

15        THE COURT:  Mr. Williams, I could have sent you away

16  for a long time, and I didn't.  You've got a strong family

17  that's back there.  You've got people in your life that need

18  you.  You don't need to be doing this stuff.  I can't tell you

19  what to do.  You're an adult.  You make your choices.  What I

20  can tell you is if you're back in a federal court, you're

21  probably not going to like the result.  And you may not like my

22  result, but I did factor in the compassion.

23        Your attorney has done you an excellent job in

24  advocating on your behalf.  It's up to you from this point.

25  The book of Raymond Williams is still to be written.  There's a

1   lot of chapters that we haven't read, and there's a lot of

2   people that's sitting behind you that would like to read that

3   and they would like to read it and smile, and I would like to

4   read it and smile.  Only you can write that book.

5       So I wish you the best of luck.  I wish you Godspeed.

6   I hope I never see you in this courtroom again.  I hope these

7   agents never see you again.  And I wish you good luck,

8   Godspeed.

9       With that, I'd like to thank counsel for their work in

10  this case.  I'd like to thank our great Marshals and our CSOs

11  that do yeoman's work every day.  I'd like to thank my staff.

12      Mr. Williams, Godspeed to you.

13      Court's adjourned.

14    (Proceedings concluded at 11:15 a.m.)

15                           - - -

16

17                  C E R T I F I C A T E

18      I certify that the foregoing is a correct transcript

19  from the record of the proceedings in the above-entitled

20  matter.

                       s/Julie A. Wolfer
21                     Julie A. Wolfer, RMR, RDR, CRR
                       Official Reporter

22

23

24

25