RECEIVED

DEC 1 6 2024

KELLY L. STEPHENS, Clerk

AO 243 (Rev. 09/17)

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District Southern District of Ohio | |
|---|---|---|
| Name *(under which you were convicted):* Raymond Andrew Williams | | Docket or Case No.: 1:20-cr-66 |
| Place of Confinement: FCI Schuylkill; Minersville, PA | Prisoner No.: | |
| UNITED STATES OF AMERICA | Movant *(include name under which convicted)* | |
| V. | Ramond Andrew Williams | |

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   US District Court; Southern District of Ohio; 100 East Fifth Street; Western Division; Cincinnati, Ohio 45202

   (b) Criminal docket or case number (if you know): ___1:20-cr-66___

2. (a) Date of the judgment of conviction (if you know): _____

   (b) Date of sentencing: _____

3. Length of sentence: _____

4. Nature of crime (all counts): 21 U.S.C. §841; 18 U.S.C. §922(g)(1); Possession of a Controlled Substance; Possession of a Firearm by a Prior Felon.



5. (a) What was your plea? (Check one)

   (1) Not guilty ☐       (2) Guilty ☒       (3) Nolo contendere (no contest) ☐

6. (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

   N/A

6. If you went to trial, what kind of trial did you have? (Check one)       Jury ☐       Judge only ☒

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?       Yes ☐       No ☒

8. Did you appeal from the judgment of conviction?    Yes ☐    No ☒

9. If you did appeal, answer the following:

   (a) Name of court: _____ N/A _____

   (b) Docket or case number (if you know): ____ N/A ____

   (c) Result: _____ N/A _____

   (d) Date of result (if you know): _____ N/A _____

   (e) Citation to the case (if you know): ____ N/A ____

   (f) Grounds raised:

           N/A

   (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☐    No ☒

     If "Yes," answer the following:

     (1) Docket or case number (if you know): ____ N/A ____

     (2) Result: _____

              N/A

     (3) Date of result (if you know): _____

     (4) Citation to the case (if you know): ____ N/A ____

     (5) Grounds raised:

           N/A

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

   Yes ☐    No ☒

11. If your answer to Question 10 was "Yes," give the following information:

   (a) (1) Name of court: _____ N/A _____

      (2) Docket or case number (if you know): _____

      (3) Date of filing (if you know): ____ N/A ____

              N/A

(4) Nature of the proceeding: _____ N/A _____

(5) Grounds raised:

N/A

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐   No ☒

(7) Result: _____ N/A _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____ N/A _____

(2) Docket of case number (if you know): _____

(3) Date of filing (if you know): _____ N/A _____

(4) Nature of the proceeding: _____

(5) Grounds raised:

N/A

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐   No ☒

(7) Result: _____ N/A _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:    Yes ☐   No ☒

(2) Second petition:    Yes ☐   No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

Plea Bargain, No Appeal Allowed prior to 2255.

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** Prior Felony to Firearm Enhancement charge, §2K2.1, is not met, as Petitioner's State "Fleeing and Eluding Offense" is not a Felony charge.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):
Counsel was ineffective for failure to argue that the "Fleeing and Eluding," Ohio State charge in this matter is not a felony offense, thus does not qualify for the §2K2.1 enhancement this Petitioner was given at sentencing. As there was no 'serious injury to persons or property,' required for Felony conviction in Ohio, Petitioner's flight from Police was a Class A Misdemeanor Offense at best. The Enhancement prior Felony Offense does not exist in this case, requiring reversal.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

Plea Bargain does not allow Direct Appeal.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:     N/A

Name and location of the court where the motion or petition was filed:

N/A

Docket or case number (if you know):

Date of the court's decision:     N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know):

Date of the court's decision: _____ N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

N/A

**GROUND TWO:** 18 U.S.C. §922(g)(1) is held Unconstitutional and VOID, since the Possession of a Firearm cannot be made permanently illegal.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Caselaw supports the finding that 18 U.S.C. §922(g)(1) is Unconstitutional, as it advocates a permanent ban to possession of firearms by a prior felon, in a direct violation of the Second Amendment. Several Circuits support this view, and serious consideration for a Federal Law retroactively applicable to remove this charge from Federal consideration is under way.

(b) Direct Appeal of Ground Two:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒   =

(2) If you did not raise this issue in your direct appeal, explain why:

Appeal not allowed under Plea Bargains.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed:

N/A

Docket or case number (if you know):

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐ No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know):

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

Appeal not allowed under Plea Bargains.

**GROUND THREE:**                                          N/A

    (a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):


N/A


    (b)  **Direct Appeal of Ground Three:**

        (1)  If you appealed from the judgment of conviction, did you raise this issue?

            Yes ☐          No ☒

        (2)  If you did not raise this issue in your direct appeal, explain why:

           Appeal not allowed under Plea Bargains.

    (c)  **Post-Conviction Proceedings:**

        (1)  Did you raise this issue in any post-conviction motion, petition, or application?

            Yes ☐          No ☒

        (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:                    N/A

Name and location of the court where the motion or petition was filed:

N/A

Docket or case number (if you know):

Date of the court's decision:                  N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

        (3)  Did you receive a hearing on your motion, petition, or application?

            Yes ☐          No ☒

        (4)  Did you appeal from the denial of your motion, petition, or application?

            Yes ☐          No ☒

        (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

            Yes ☐          No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know): _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available):

N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

Appeal is not allowed under a Plea Bargain.

**GROUND FOUR:** _____ N/A _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

N/A

(b) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

Appeal not allowed on Plea Bargain.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

N/A

Type of motion or petition:       N/A

Name and location of the court where the motion or petition was filed:

      N/A

Docket or case number (if you know): _____

Date of the court's decision:      N/A

Result (attach a copy of the court's opinion or order, if available):

      N/A

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

      N/A

Docket or case number (if you know): _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available):

      N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

      Appeal not allowed under Plea Bargain.

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

      Both Grounds never raised in any Court, §2255 herein is first allowable Appeal level.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?    Yes ☐    No ☒

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

    N/A

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

    (a) At the preliminary hearing:

    unknown

    (b) At the arraignment and plea:

    unknown

    (c) At the trial:

    N/A

    (d) At sentencing:

    Robert J. Clark

    (e) On appeal:

    N/A

    (f) In any post-conviction proceeding:

    N/A

    (g) On appeal from any ruling against you in a post-conviction proceeding:

    N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ☒    No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐    No ☒

    (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

    N/A

    (b) Give the date the other sentence was imposed:

    (c) Give the length of the other sentence:    N/A

    (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐    No ☒

18. **TIMELINESS OF MOTION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

THIS MOTION IS TIMELY FILED.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

Full Evidentiary Hearing on aspect of Ineffective Assistance of Counsel on enclosed arguments presented herein...

or any other relief to which movant may be entitled.

[Pro-Se]

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ .

(month, date, year)

Executed (signed) on _____ (date)

Raymond Williams 12-5-2024
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

ORIGINAL BRIEF IN SUPPORT OF MOTION UNDER 28 U.S.C. §2255

1)      The "Prior Felony" requirement for Firearm Enhancement under §2K2.1
        is not met, as Petitioner's Ohio State "Fleeing and Eluding Offense" is
        not a "Prior Felony" as it need not be charged as one.

—      United States v. Antonia Armstrong, 2024 US Dist. LEXIS 32925 (6th Dist.);

"Amendment: 891, which updates United States Sentencing Guidelines §2K2.1, makes no

change to §2K2.1(b)(6). Section 2K2.1(b)(6) provides for a four-level enhancement if

a defendant--"Used. or possessed any firearm or ammunition in connection with another

felony offense[] or possessed or transferred any firearm or ammunition with knowledge,

intent, or reason to believe that it would be used or possessed in connection with

another felony offense." Commentary Application Note 14 specifies that subsection

(b)(6)(B) applies when "a firearm is found in close proximity to drugs, drug -

manufacturing materials, or drug paraphenalia...because the presence of the firearm

has --

        THE POTENTIAL OF FACILITATING ANOTHER FELONY OFFENSE OR ANOTHER OFFENSE."

Application Note 14(c) goes on to state that "for the purposes of (b)(6)(B), [another

felony offense] means any federal, state, or local offense...punishable by imprisonment

for a term exceeding one year, regardless whether a criminal charge was brought, or a

conviction obtained." United States Sentencing Guidelines §2K2.1, Application Note

14(C)(emphasis added)."

        In the instant case, Petitioner, under relevant conduct, is alleged to have

committed the act of fleeing and eluding a Police Officer, then during the pursuit,

having disposed of a firearm by tossing it from the moving vehicle, onto the highway

road surface area. The application of §2K2.1's enhancement was added to Petitioner's

Sentence Term, because the allegation is that he possessed the firearm that he later

disposed of, while fleeing and eluding the Police Officer. As the Statute reads;

        "[Petitioner] used or possessed any firearm in connection with another
                felony offense...[the fleeing and eluding allegation]."

        However, the Petitioner argues herein, that under Ohio law, and it was Ohio

State that arrested and charged Petitioner initially in this matter, has two options, not considered by this Court that negate the "Prior Felony" required to add this §2K2.1 enhancement to Petitioner's term of imprisonment. First, Ohio's Statute for Felony Fleeing and Eluding has a 5th Degree level, and that level only carries a term of imprisonemnt; "up to a year," thus not the Federal standard of a "Year and a day," required to classify as a Federal Felony Offense. Meaning, that, had the State, whom had the only authority to prosecute for the Fleeing and Eluding Offense, since no Federal Officer were involved at that point of the matter, and the State, having determined not to prosecute, there is no determination that under Ohio State laws, this Petitioner has the requisite "Prior Felony" Offense that satisfies the Federal Standard requirement of a 'Year and a Day.'[*]

Then there is the consideration, not being in a residential area, or other congested area of population, that Petitioner could have not received a Class One Misdemeanor conviction for the Fleeing and Eluding. Legally speaking, absent the conviction for at least a Class Four Felony Fleeing and Eluding, under Ohio State laws Offense, the Federal Court has no qualifying "Prior Felony" with which to support the §2K2.1 Enhancement it issued at Sentencing. The Appointed Counsel failed to then investigate this issue, then fully advise the Petitioner of this challengeable area and under Lafler v. Cooper, and Missouri v. Frye, (S.Ct. 2012) that Counsel had a duty and an obligation to pursue that investigation and counselling to his client. Lafler, 566 US 134, and Missouri, 566 US 156, both concerned the issue of improper and incomplete investigation into applicable laws that impacted their clients. "Citing [in Upshaw v. Stephenson, 97 F.4th 365 (LEXIS Pg. 11](6th Cir.)], binding Supreme Court precedent, we have emphasized that "[c]ounsel's duty to investigate has been repeatedly reaffirmed by the Supreme Court." Poindexter, 30 F.Appx. at 528, citing Wiggins v. Smith, 539 US 510, 534 (S.Ct. 2003) and then citing Williams v. Taylor, 529 US 362, 399 (S.Ctr. 2000)). Though Strickland does not require counsel to investigate every conceivable line" of evidence, "strategic choices made after

less than complete investigation are 'reasonable professional judgments that support the limitations on investigations." Wiggins, 539 US at 533 (quoting Strickland, 466 US at 690-91. Meaning that an incomplete investigation, which includes applicable caselaws to his client, can only meet the 'reasonable professional standards' of competent counsel if that caselaw does not effect a strategic determination in the client's case. In the case of a Plea Bargain, NOT informing a client that a new case has a direct impact on whether or not to even Plea in his matter, is clearly a "strategic matter."

"An attorney has a duty to research the applicable law and advise his client in such a way as to allow him to make informed choices, when the attorney undertakes to represent a criminal defendant." Straw v. United States, 931 F.Supp. 49, 51-52 (Dist. Mass. 1996). (Arfument is valid because the Petitioner would be prejudiced if there was a reasonable probability that, but for his counsel's failure to cite the [New Caselaw(s)] case, the result at his Sentencing would have been different). See: Strickland, 466 US at 694; Scarpa v. Dubois, 38 F.3d 1, 15-16 (1995)(1st Cir.). A "reasonable probability" is defined as one which undermines the confidence in the result of the proceeding." Scarpa, 38 F.3d at 16). Ward v. Kempthorne, 2008 US Dist. LEXIS 60881 (10th); "Once counsel took on the representation, [he/she] had a duty to research and analyze the applicable law in a timely fashion." "[A]n attorney has a duty to research the applicable law and to advise his client in such a way as to allow him to make informed choices, when the attorney undertakes to represent a criminal defendant." United States v. Khalaf, 116 F.Supp.2d 210, 213 (Dist. Mass. 1999).

Clearly then, an Attorney that fails to investigate and thus properly advise a client to the change in law, which in some cases negates the entire idea of a Plea Bargain. A client, never fully informed, even when asked at Sentencing as to the performance of his Counsel, cannot be held to have been aware of laws the attorney never investigated. That response then cannot bind the Petitioner, since it was an incomplete advisement his Counsel gave him prior to that question.

**2).**  What is the correct analysis and method of determining the Constitutional challenge under the Second Amendment, to possession of a firearm by a prior - convicted felon ?

Under <u>Quailes</u>, 2023 US Dist. LEXIS 147657 (3rd. Dist);

"1.   The Text of the Second Amendment and Significant Rulings on the Second Amendment.  -

The text of the Second Amendment states; 'A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.' United States Constitution, Amendment II.

From 1939 to 2008, the Second Amendment was interpreted in accordance with <u>US v. Miller</u>, 307 US 174 (1939). In <u>Miller</u>, the Supreme Court focused on the history and meaning of the word 'Militia' in the context of the Second Amendment. The Court observed that the Constitution, as originally adopted, granted Congress the power '"To provide for calling forth the Militia to execute the Laws of the Union."' <u>Miller</u>, 307 US at 178 (quoting United States Constitution, Article 1, §8). The Court then held: 'With obvious purpose to assure the continuation and render possible the effectiveness of such forces the declaration and guarantee of the Second Amendment were made. It must be interpreted and applied with that end in view.' Id. This Militia-based rationale for the Second Amendment held swa for 70 years. See: <u>US v. Bullock</u>, 2023 US Dist. LEXIS 112397 (5th Dist.)(discussing scholarly articles regarding <u>Miller</u>).

Then, in 2008 and 2010, the Supreme Court decided <u>District of Columbia v. Heller</u>, 554 US 570 (2008), and <u>McDonald v. Chicago</u>, 561 US 742 (2010), resulting in a significant change in our understanding of the Second Amendment. In those decisions, the Court 'recognized that the Second and Fourteenth Amendments protect the rights of an ordinary, law-abiding citizen to possess a handgun for self-defense.' <u>Bruen</u>, 142 S.Ct. at 2122 (citing <u>Heller</u>, 554 US at 570; <u>McDonald</u>, 561 US at 742). And then, in 2022, the Court held in <u>Bruen</u> "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." Id. Following the holdings of <u>Heller</u>, <u>McDonald</u>, and <u>Bruen</u>, the Nation now understands that the Second Amendment establishes an individual right to keep and bear arms that does not depend on service in the Militia.

In the years following <u>Heller</u> and <u>McDonald</u>, 'the Courts of Appeals...coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny.' Id. at 2125. In <u>Bruen</u>, the Court rejected the two - step framework that had developed, and detailed the correct standard to be applied to Second Amendment challenges. Id. at 2126-34. The Court explained that the correct standard is as follows:

In keeping with Heller, we hold that when the Second Amendment's plain
text covers an individual's conduct, the Constitution presumptively
protects that conduct. To justify its regulation, the government may
not simply posit that the regulation promotes an important interest.
Rather, the government must demonstrate that the regulation is
consistent with this Nation's historical tradition of firearm
regulation. Only if a firearm regulation is consistent with this
Nation's historical tradition may a court conclude that the individual's
conduct falls outside the Second Amendment's 'unqualified command.'

Id. at 2126. (quoting Konigsberg v. State Bar of California, 366 US 36, 50, Note 10

(1961)). The Court provided some guidance as to how courts are to assess whether a

modern firearm regulation is consistent with historical tradition. The Court

observed first that when analyzing a modern firearm regulation that addresses a

'general societal problem that has persisted since the 18th Century'.:

[T]he lack of a distictively similar historal regulation addressing that
problem is relevant evidence that the challenged regulation is inconsistent
with the Second Amendment. Likewise, if earlier generations addressed the
societal problem, but did so through materially different means, that could
be evidence that a modern regulation is unconstitutional. And if some
jurisdictions actually attempted to enact analogous regulations during this
timeframe, but those proposals were rejected on constitutional grounds,
that rejection surely would provide some probative evidence of
unconstitutionality.

Id. at 2131. On the other hand, when analyzing a modern firearm regulation that was

'unimaginable' during the founding era, the Court instructs:

[T]his historical inquiry that courts must conduct will often involve
reasoning by analogy — a commonplace task for any lawyer or judge. Like
all analogical reasoning, determining whether a historical regulation is
a proper analogue for a modern firearm regulation requires a determination
of whether the two regulations are 'relevantly similar.'

Id. at 2132 (citation omitted). In order to ascertain whether regulations are

'relevantly similar,' the Court notes that 'Heller and McDonald point toward at

least two metrics: how and why the regulations burden a law-abiding citizen's right

to armed self-defense.' Id. at 2133. The Court explains that the burden on the

Government is to identify a 'well-established and representative historical analogue,

not a historical twin. So, even if a modern-day regulation is not a dead ringer for

for hisotrical precursors, it may still be analogous enough to pass constitutional

muster.' Id.

2. The Third Circuit applies Bruen in Range.

Nearly one year after Bruen was decided, the Third Circuit issued an Enbanc

decision in Range v. US, 69 F.4th 96 (3rd Cir. 2023). The majority opinion, authored

by Judge Hardiman and joined by eight Judges, holds that Brian Range remains among

'the people' protected by the Second Amendment depite his false statement conviction,

and 'beacuse the Government did not carry its burden of showing that our Nation's

history and tradition of firearm regulation supporting disarming Range,' Section 922(g)(1) violates the Second Amendment as applied to Range. Id at 98.

The Range decision arises from a civil suit rather than a criminal prosecution. In 1995, Brian Range pleaded guilty in the Court of Common Pleas of Lancaster County to one Count of making a false statement to obtain food stamps in violation of Pennsylvania law. He was sentenced to three years' probation, and ordered to pay restitution, costs and a fine. When Range pleaded guilty, his conviction was classified as 'a misdemeanor punishable by up to five years' imprisonment. The felony-equivalent conviction precludes Range from possessing a firearm pursuant to 18 U.S.C. §922(g)(1).[1] After Range learned that he was barred from possessing a firearm because of his 1995 conviction, he filed a civil action seeking a declaration that Section 922(g)(1) violates the Second Amendment as applied to him and an injunction prohibiting the law's enforcement against him. Range, 69 F.4th at 98-99.

The parties filed cross-motions for summary judgment. The district court granted the government's action, applying then-controlling Third Circuit precedent. Id at 99. (noting that the district court relied upon US v. Mazzarella, 614 F.3d 85 (3rd Cir. 2010), Binderup v. AG, 836 F.3d 336 (3rd Cir. 2016), Holloway v. AG, 948 F.3d 164 (3rd Cir. 2020), and Folajtar v. AG, 980 F.3d 897 (3rd Cir. 2020)). Range appealed, and while his appeal was pending, the Supreme Court decided Bruen. The panel hearing Range's Appeal affirmed the district court's grant of summary judgment in the Government's favor, holding that the Government had met its burden to show that §922(g)(1) reflects the Nation's historical tradition of firearm regulation such that Range's conviction 'places him outside of the class of people traditionally entitled to Second Amendment rights.' Range, 53 F.4th at 266. Range then petitioned for rehearing Enbanc, the court granted the petition, and vacated the panel opinion. Range v. AG, 56 F.4th 992 (3rd Cir. 2022).

The Enbanc majority opinion concludes by clarifying that the decision is 'a narrow one' deciding the constitutionality of Section 922(g)(1) only as applied to Bryan Range based on his prior felony-equivalent false statement conviction.

[This was based on Government's failure to prove that Range presented a danger to 'the orderly functioning of society'].

Range, 69 F.4th at 106. Because range is binding precedent applying Bruen in the context of an as-applied challenge to Section 922(g)(1) — the same criminal statute as issue in this case — it is important to understand the courts' analysis and rationale.

Applying Bruen, the court explained that the first part of the analysis is to

---

Note 1 - Actually under 28 U.S.C. §1738, Full Faith and Credit, since Range's crime was a misdemeanor offense under Pennsylvania law, there is no 'felony-equivalent' as stated herein, since the Federal law cannot supercede State Adjudications, and since the State of Pennsylvania deems this a misdemeanor offense, no matter that the term of imprisonment exceeds a year-and-a-day in length, it remains a misdemeanor, not a felony charge.

decide whether the text of the Second Amendment applies to the person and ~~his proposed~~ conduct. As noted by the Court, this determination is significant, because if the Second Amendment applies to the person and proposed conduct, then the Government bears the burden of proving that the firearms regulation at issue '"is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."' Range, 69 F.4th at 101. (quoting Bruen, 142 S.Ct. at 2127).

On the first question, the court determined that Range remains one of 'the people' despite his prior conviction. Id. at 101-03. The Court reached this conclusion for four reasons, none of which depended upon specifics of Range's conviction. First, the Court noted that because the criminal histories of the plaintiffs in Heller, McDonald, and Bruen were not at issue, the Supreme Court's references to 'law-abiding, responsible citizens' were dicta that should not be construed too broadly. Id. at 101. Second, the Court observed that other Constitutional provisions, including the First and Fourth Amendments, also reference 'the people,' and the meaning of 'the people' should not vary across provisions. Id. at 101-02. Third, the Court agreed with the statement in Binderup and the logic of then-Judge Barrett in her dissenting Opinion in Kanter v. Barr, 919 F.3d 437, 452 (7th Cir. 2019), that persons with Second Amendment rights may nonetheless be denied possession of a firearm. Finally, the Court noted that the phrase 'law-abiding, responsible citizens' is too expansive and vague to constitute a workable standard and would, in any event, give far too much authority to legislatures to decide whom to exclude from 'the people.' Id. at 102-03.

Next, the Court addressed the 'easy question' of whether the Second Amendment applies to the proposed conduct. The Court held that Section 922(g)(1) regulates Second Amendment conduct because Range's request to possess a rifle to hunt and a shotgun to defend himself at home are plainly within the Constitutional rights as defined by Heller. As a result, 'the Constitution presumptively protects that conduct.' Id. at 103 (quoting Bruen, 142 S.Ct. at 2126).

Finally, the Court addressed the question of whether "the Government ha[d] jusitified applyinh Section 922(g)(1) to Range 'by demonstrating that it is consistent with the Nation's historical tradition of firearms regulation.'" Id. (quoting Bruen, 142 S.Ct. at 2130.) The Court held that the Government did not carry its burden. Id. The Court addressed five discrete arguments presented by the Governemnt, but found that none satisfied the Government's burden. Id. at 103-06. Ultimately, the Court determined that '[b]ecause the Governemnt has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, §922(g)(1) cannot constitutionally strip him of his Second Amendment rights.' Id. at 106.

### 3. Application of the Bruen and Range Analytical Framework to This Case.

The analytical framework for addressing the as-applied constitutional challenge to Section 922(g)(1) is established in Range, which applies the standard set forth in Bruen. Range, 69 F.4th at 101. The Court will apply this framework to the facts and arguments presented in this case.

As a preliminary matter, the Government asserts the Range is wrongly decided because the Government has merely included that argument to preserve it for Appellate Review. (See Id.) The Government distinguishes Range based on the fact that Bryan Range had a 'single decades-old conviction for making a false statement to obtain food stamps,' whereas Quailes is 'manifestly not like Range' based on a comparison of their prior convictions. The Court further agrees that this is a meaningful distinction between the Range decision and the facts of this case that bears discussion, as detailed in the following sections. However, it is not sufficient to simply distinguish the facts of the cases because that does not answer the question of whether the criminalization of firearm possession by Quailes is constitutional. In order ro make that determination, the Court must conduct the analysis required by Bruen and Range.[2]

> i. Quailes, as a convicted felon, has Second Amendment Rights.

The threshold question that must be addressed is whether Quailes is one of 'the people' protected by the Second Amendment despite having prior felony convictions. Range, 69 F.4th at 101. Quailes asserts that he remains among 'the people' for Second Amendment purpsoes, and the Government does not disagree. (Doc. 86, pp. 4-5; Doc. 92, Pg. 11).

The Third Circuit determined that Bryan Range was among 'the people' — despite his prior felony-equivalent conviction — for four reasons. Range, 69 F.4th at 101-03. Those four reasons do not depend to any extent on the nature of Range's prior conviction. Accordingly, the fact that Quailes has felony drug trafficking convictions instead of Range's false statement conviction is a distinction, but it does not warrant a different conclusion as to the threshold question of whether Quailes is one of 'the people' protected by the Second Amendment. He is.

Note 2 — In US v. Law, No. 20-351, 2023 WL 5176297 (W.D. Pa. Aug. 11, 2023), the district court denied the defendant's motion for reconsideration of his motion to dismiss a Section 922(g) charge based on Range, because the defendant failed to raise a meaningful as-applied challenge to the statute and the predicate crime in Range was distinguishable from the defendant's predicate offense and other disqualifying circumstance of firearm possession while under a criminal justice sentence. In the Law case, the district court denied the motion for reconsideration and did not consider the merits of the motion to dismiss, whereas this court has granted Quailes motion to reconsider and is addressing the merits of the constitutional challenge. Thus, it is not sufficent in this case to merely note that the disqualifying predicate offense in Range is distinguishable from the predicate offense in this case.

## ii. Section 922(g)(1) regulates Second Amendment conduct.

After determining that Range was one of 'the people,' the court turned to the 'easy question' of whether Section 922(g)(1) regulates Second Amendment conduct. Range, 69 F.4th at 103. The court held that Section 922(g)(1) does regulate Second Amendment conduct because "Range's request — to possess a rifle to hunt and a shotgun to defend himself at home — tracks the constitutional right as defined by Heller." Id. (quoting Heller; 554 US at 582 ("[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.") In Bruen, the Supreme Court held that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. Bruen, 142 S.Ct. at 2126. Applying this standard to the facts in Bruen, the Court found the test easily satisfied because the plain text of the Second Amendment protects the plaintiff's proposed course of conduct of carrying handguns in public. Id. at 2134-35.

In Bruen and Range, the plaintiff's proposed conduct was readily apparent because they filed lawsuits to allow them to engage in the conduct at issue. In a criminal case, a different approach is required. Quailes asserts that the allegations in the Indictment should be assumed for purposes of answering this question. (Doc. 86, Pg. 6) Here, the Indictment alleges that Quailes possessed handguns and ammunition. (Id.) Quailes asserts that since possession of a firearm either in one's home or carried in public is clearly Second Amendment conduct, the standard is met. (Id.).

The Government argues that Quailes' challenge fails at this step in the analysis because the Supreme Court has made clear that 'the core purpose of the Second Amendment is to protect the right to maintain arms to use in self-defense.' 'the government may disarm a person who possess a firearm for an illegal purpose,' and Quailes has not argued that he possessed the gun for the purposes of self-defense.' (Doc. 92, Pgs. 12-14). In reply, Quailes asserts that the Government's argument that he must affirmatively establish that he possessed the firearm for self-defense 'reads a requirement into the Bruen analysis that does not exist.' (Doc. 94, Pg. 2).

In a criminal case, a defendant accused of illegal possession of a firearm pursuant to Section 922(g) cannot be required to state his purpose for possessing a firearm without simultaneously admitting the possession, which is an element of the offense. The crux of the Section 922(g)(1) charge is that the mere possession of a firearm is a criminal act due to the defendant's status as a convicted felon. Accordingly, there cannot be a requirement for the defendant to state his purpose for possessing the firearm. Rather, as suggested by Quailes, the court will accept the conduct alleged in the Indictment as true for purpsoes of making this determination. Quailes' possession

of a firearm is conduct covered by the plain text of the Second Amendment: "[T]he right of the people to keep and bear Arms shall not be infringed." See: Bullock, 2023 WL 4232309 at *28 (holding that the plain text of the Second Amendment covers Mr. Bullock's conduct, which was 'possession of ordinary forearms in the home.').

The Government makes a second argument about why the Second Amendment did not apply to Quailes at the time of the offense — that is, because he was on State Parole at the time, and his possession of loaded firearms violated the terms of his Parole. (Doc. 92, Pgs. 14-15). Quailes replies that his status as a State Prolee is irrelevant and unconnected to the analysis under Bruen/Range (Doc. 94, Pg. 2).

Although the Government's point is a bit opaque, the Court construes this as a similar argument to the first: because Quailes did not lawfully possess the firearms, his conduct in possessing then is not entitled to Second Amendment protection. This argument puts the cart before the horse. That Quailes may lawfully be stripped of a firearm does not prove that he did not have a Second Amendment right to possess the firearms to begin with. See: Range, 69 F.4th at 102 (citing Binderup, 836 F.3d at 344; Kanter, 919 F.3d at 452 (Barrett, Ju., dissenting)). In other words, the fact that Quailes may have violated the conditions of his State Parole by possessing the firearm — as well as allegedly violating federal law by possessing the firearm due to his status as a convicted felon — does not answer the question of whether his conduct of possessing the firearm is covered by the Second Amendment. For reasons already explained, Quailes possession of a firearm is conduct covered by the plain text of the Second Amendment. As a result, 'the Constitution presumptively protects that conduct.' Bruen, 142 S.Ct. at 2126.

> iii. The Government has not me4t its burden of establishing that
> Section 922(g)(1) is consistent with the Nation's
> 'historical tradition of firearm regulation' as applied
> in this case.

Having determined that Quailes and his conduct are protected by the Second Amendment, the Court must determine whether the Government canconstitutionally 'strip him of his right to keep and bear arms.' Range, 69 F.4th at 103. In order to make this determination, the Court must decide whether the Government can justify the criminalization of firearm possession by Quailes 'by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.' Bruen, 142 S.Ct. at 2130; See also: Range, 69 F.4th at 103.

In Bruen, the Supreme Court provided some guidance as to the method Courts should employ to make this determination. The Court should first assess whether the challenged firearm regulation addresses 'a general societal problem that has persisted since the 18th Century.' or a problem that was 'unimaginable at the founding.' Bruen, 142 S.Ct.

at 2132.

In order to analyze Section 922(g)(1) under this framework, the Court must determine whether a historical regulation is a proper analogue for Section 922(g)(1), which requires a determination of whether the two regulations are 'relevantly similar,' Bruen, 142 S.Ct. at 2132. In order to ascertain whether regulations are 'relevantly similar,' the Court notes that Heller and McDonald point towards at least two metrics: 'how and why the regulations burden a law-abiding citizen's right to armed self-defense.' Id. at 2133. The Court explains that the burden on the Government is to identify a 'well-established and repesentative historical analogue,' not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it may be analogous anough to pass constitutional muster. Id.

Under this framework, the Court must first specify what exactly the Governement must establish by analogical reasoning. Is it the Government's burden to establish a historical analogue for Section 922(g)(1)'s criminalization of firearm possession by a person convicted of any felony or felony-equivalent offense ? Or, given that this is an as-applied challenge, and Quailes' predicate convictions are for drug trafficking offenses, must the Government establish a historical analogue for criminalization of firearm possession by a person convicted of a felony drug trafficking offense ? Quailes takes the position that the first framing is correct, stating: '[T]he Government must identify founding-era laws that made it a crime for anyone convicted of an offense punishable by more than one of year of imprisonment to possess a firearm.' (Doc. 86, Pg. 6). The Government takes the position that the second framing of the issue is correct, asserting: 'There is clear historical support for restricting the possession of firearms by persons who, like Quailes, previously committed dangerous drug trafficking felonies.' (Doc. 92, Pg. 16).

In Range, the Court stated several times that it was determining whether the historical firearms regulations cited by the Government were analogous to "Range's situation" or "someone like Range." Range, 69 F.4th at 104, note 9, 105. Although the Court does not explain precisely what aspect of Range's "situation" is most relevant or what metric should be used to determine whether someone is "like Range," the Court specifically observes that one founding era law was not a relevant historical analogue because Range's prior offense of making a false statement on a food stamp application did not involve the same conduct as the purported historical analogue. Id. at 105. In addition, the conclusion of the majority opinion states: 'Brian Range challenged the constitutionality of 18 U.S.C. §922(g)(1) only as applied to him given his violation of Pa. Stat. Ann. §481(a)...Because the Government has not shown that our Republic has a

longstanding history and tradition of depriving people like Range of their firearms, §922(g)(1) cannot constitutionally strip him of his Second Amendment rights,' Id. at 106. Based on a careful review of the history and tradition analysis in Range, the court concludes that the more specific formulation of the question presented is the correct one.

So, then, the Court will examine the historical analogues identified by the Government in this case to determine whether the Government has met its burden to establish a historical analogue for criminalization of firearm possession by a person who, like Quailes, has been convicted of a felony drug trafficking offense.

First, the Government points to the language in Heller, which was repeated in Justice Alito and Justice Kavanaugh's concurring opinions in Bruen, that the decisions do not cast doubt on 'longstanding prohibitions on the possession of firearms by felons.' (Doc. 92, Pgs. 16-17(citations omitted).). The very same argument was rejected in Range because the 1961 version of Section 922(g)(1) does not qualify as a 'longstanding' regulation 'for purposes of demarcating the scope of a constitutional right.' Range, 69 F.4th at 104.[3] Based on the holding in Range that "the 1961 iteration of §922(g)(1) does not satisfy the Government's burden," the Court reaches the same conclusion here. Id.

In US v. Bullock, the district court declined to rely on the language from Heller, McDonald, and Bruen about 'longstanding prohibitions on the possession of firearms by felons' because it was dicta that amounted to an advisory opinion. 2023 WL 4232309 at *17-19 (citations omitted). Similarly, in Range, the Court rejected the argument that the Supreme Court's references to 'law-abiding citizens' in Heller was controlling with respect to the issues of whether Range is among 'the people' despite his prior conviction because the references to 'law-abiding responsible citizens' were dicta which should not be 'overread' for multiple reasons. Range, 69 F.4th at 101-03. The Court also noted that the Heller, McDonald and Bruen Courts did not actually cite any 'longstanding prohibitions' because they did not undertake an exhaustive historical

---

Note 3 — The court noted that the earliest version of the staute, the Federal Firearms Act of 1938, applied only to violent criminals, which means that the earlier version of the law would not have applied to Range. Range, 69 F.4th at 104. The Government has not argued in this case that the 1938 version of the law would have applied to Quailes. But, even if that argument were raised, the Court in Range expressed skepticism about whether the 1938 version of the statute would be considered 'longstanding' given the Bruen Court's emphasis on Founding – and Reconstruction – era sources. Id.

analysis of the scope of the Second Amendment. Id. at 103, note 7. Thus, the 'longstanding prohibition' language in <u>Heller</u>, <u>McDonald</u>, and <u>Bruen</u> does not staisfy the Government's burden for the additional reason that it is dicta that this Court will not construe to resolve the constitutional issue in this case.

Following the argument that the Supreme Court's "longstanding prohibition language" is controlling, the Government makes no effort to identify a historical analogue that involves the criminalization of firearm possession for those convicted of drug trafficking offenses (or any kind of drug-related or trafficking-related offense for that matter). Instead, the Government argues that historical analogs, including 17th Century English Law, Colonial Laws, post-ratification State Laws, and Reconstruction-era State laws, empowered Government officials to disarm those who were deemed dangerous, irresponsible, or unlikely to abide by the law.[4] (DOc. 92, Pgs. 18-22). The Government contends that these historical analogs are relevantly similar to the criminalization of <u>Quailes'</u> possession of a firearm because his prior drug trafficking convictions demonstrate that he poses a danger to society. (Id. at 24-26). The Government distinguishes the Third Circuit's analysis of the suggested analogs in <u>Range</u> on the ground that <u>Range's</u> prior conviction did not pose a danger to society).(Id. at 23).

In the absence of any close historical analogue, the Court is tasked with determining whether a historical regulation is 'reletively similar' to the modern regulation. Here, the Governemnt is asserting that historical disarmament of those deemed dangerous is sufficiently similar to disarming a convicted drug trafficker such as <u>Quailes</u> to satisfy its burden. In <u>Range</u>, the Court considered the argument presented by Bryan Range that 'dangerousness' should be the touchstone for the 'historical tradition' analysis. <u>Range</u>, 69 F.4th at 104, note 9 (noting that the argument rested upon a concurring opinion in <u>Binderup</u>, 836 F.3d at 369. Judge Bilbas' dissent in <u>Folajtar</u>, 980 F.3d at 913-20, and then Judge-Barrett's dissent in <u>Kanter</u>, 919 F.3d at 454). The Court noted that the Governemnt replied to the argument by asserting that '10 of the 15 Judges in <u>Bindrup</u> and the Court in <u>Holloway</u> and <u>Folajtar</u> rejected dangerousness or violence as the touchstone.'[5] Id.

_____

NOTE 4 — The Government also points to precursors to the Second Amendment proposed in the State ratifying conventions in Pennsylvania and Massachussetts. (Doc. 92, Pgs. 19-20). In each proposal, it was suggested that those who presented a 'danger of public injury' or were not 'peacable citizens' would not have a right to keep and bear arms. (id.). The Government does not meet its burden with this historical evidence because the proposed precursosrs to the Second Amendment did not become law and the import of that fact is difficult to discern. In addition, it is not clear that proposals made during two ratifying conventions is sufficient evidence to establish a historical tradition. See: <u>Bullock</u>, 2023 WL 4232309 at 22-23; See also: <u>Kanter</u>, 919 F.3d at 456 (Barrett, J., dissenting).

NOTE 5 — It is interesting to note that the Government argued in <u>Range</u> that dangerousness is not the touchstone for the historical analysis, whereas it asserts the opposite here,

The Court then stated that it would not resolve that dispute because 'the Government did not carry its burden to provide a historical analogue to permanently disarm someone like Range, whether grounded in dangerousness or not. Id.

In order to determine whether the historical disarmament of those deemed dangerous is 'relevantly similar' to disarming a convicted drug trafficker such as <u>Quailes</u>, the Court is instructed to look at the two metrics of 'how and why the regulations burden a law-abiding citizen's right to self-defense.' <u>Bruen</u>, 142 S.Ct. at2133. The Government has not presented any argument comparing the 'how and why' of the historical 'dangerousness' regulations with the 'how and why' of Section 922(g)(1). Instead the Government has merely catalogued historical regulations that disarmed individuals who posed a risk of dangerousness to varying extents. In one of the earlier regulations, entire groups were disarmed, whereas another law called for case-by-case judgments. (Doc. 92, Pgs. 18-19). The Government cited another historical law that disarmed individuals who demonstrated their dangerousness by engaging in particular types of conduct, such as carrying arms in a manner that spreads fear or terror among the people. (Id.). The Government pointed to the fact that, in the Mid-19th Century, many States enacted laws requiring 'those threatening to do harm' to post a bond before they would be permitted to carry weapons in public. (Id. at 20). Then, the Government pointed to a Reconstruction-era regulation in South Carolina that disarmed 'disorderly person[s], vagrant[s], [and] disturber[s] of the peace. (Id. at 21.).

Even assuming that the examples of the historical regulations are sufficiently relevant and numerous to establish a historical tradition of disarming the dangerous, the Government did not explain to any extent the 'how' of each regulation — such as the length of time the individuals were disarmed; whether a conviction was required or any other information about the dangerousness determination was made; or what kind of offenses qualified as dangerous. The Government also did not present any argument as to the 'why' or purpose of the historical regulations. Because the Government has not provided the Court with a basis to determine whether the mechanics and purpose of the historical regulations disarming those deemed 'dangerous' are similar to the mechanics and purpose of Section 922(g)(1), the Government has not carried its burden to establish that the historical regulations are 'relevantly similar.'

Although the Government did not explain the 'how' or 'why' of the cited historical regulations or compare the mechanics or purpose of those regulations to Section 922(g)(1), the Government does argue generally that <u>Quailes'</u> prior drug trafficking convictions demonstrate the he poses a danger to society. (Doc. 92, Pgs. 24-25). The Government cites multiple authorities for the preposition that firearms are frequently used in connection with drug trafficking, which poses a danger to society. (Id.). The Government then

concludes — without the kind of explanation required by Bruen — that "[b]arring the possession of firearms by persons who have been convicted of a drug-trafficking offense is 'part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" (Id. at 25-26(quoting Bruen, 142 S.Ct. ar 2127).). The Government's conclusion rests on dangerousness as the historical 'touchstone' without any explanation of how the earlier regulations compare in mechanics or purpose to Section 922(g)(1). This comparison is too broad and does not carry the Government's burden under the Bruen/Range standard. See: Bruen, 142 S.Ct. at 2138(finding thta the historical record compiled by Respondents did not demonstrate a tradition of prohibiting the public carrying of commonly used firearms for self-defense); Range, 69 F.4th at 105 (finding that the Government did not successfully analogize historical status-based restrictions to disarm certain groups of people to Range and his individual circumstances and any such analogy would be far too broad).

Finally, if 'dangerousness' is found to be the touchstone of the historical analogue analysis, then the Court has concerns in the application of that standard in this case as well as future cases. With respect to Quailes, his prior drug trafficking offenses did not include firearms or crimes of violence. (See: Doc. 92-1). Thus, even if the Government's argument that our Nation has a historical tradition of disarming those who pose a danger to society is accepted (which this Court has not), then the Court must also consider whether the disarming of a non-violent drug offender for life is consistent with that tradition. Perhaps that is not such a stretch given the dangers posed to society from drug trafficking as noted by the Government.

But then, what about those who launder money in order to conceal the proceeds of drug trafficking, or those who maintain a premises for the purpose of drug trafficking but are not otherwise involved in the drug trafficking activities directly ? Assuming it is ultimately concluded that drug trafficking is a 'dangerous' crime for purposes of the Second Amendment analysis, are these activities sufficiently connected to drug trafficking as to be consistent with a tradition of disarming those who pose a danger to society ?

Of course, these offenses are not at issue in this case, but the Court poses these questions because the potential application of a 'dangerousness' standard will necessarily lead to this kind of case-by-case analysis that will involve consideration of the elements of the predicate offenses and possibly even the facts underlying those offense in a manner that would ressemble the categorical and modified categorical approach to determine whether a defendant's prior conviction is a 'violent felony' for purposes of the Armed Career Criminal Act. See: Bullock, 2023 WL 4232309 at *27 (noting a similar concern and compiling critisim of these analytical approaches). Moreover, in

order for 'dangerousness' to be the standard for judging modern firearm regulations, then a clear definition will need to be determined in order to avoid endless challenges and uncertainty in applying a standard which has obviously interpretive complexity. These considerations, though not the basis for granting Quailes' motion to dismiss, warrant further consideration as Courts continue to assess the constitutionality of Section 922(g)(1).

In a related case, United States v. Harper, 2023 US Dist. LEXIS 155822 (3rd Dist), where Harper had thirteen prior felony convictions and eight misdemeanors, which made it unlawful for him to possess a firearm or ammunition pursuant to 18 U.S.C. §922(g)(1), Harper's adult convictions included a prior drug trafficking offense that involved a firearm, and five armed robbery convictions. Still, Harper had a Second Amendment right to possess a firearm and his 18 U.S.C. §922(g)(1) case was dismissed.

Since this Caselaw would have had more than the required 'reasonable probability,' since there would have been no agreement to allow a Constitutionally-questioned charge such as the 18 U.S.C. §922(g)(1) "Possession of a Firearm by a Prion Felon," this Petitioner was charged with. More and more Circuits have come to agreement that not noly is this Unconstitutional, as Quailes, Harper, Willimas, Prince, Neal and even Duarte have held. There is even a Bill pending as we read this Motion, to make this retroactive. However, since this was law prior to this Petitioner's sentence, as were several of the other listed caselaws, the counsel has no excuse whatsoever not to have researched and investigated the impact this case had in his client's matter.

Both the Supreme Court and most Circuit Courts have repeatedly held that an attorney has an obligation, a duty to investigate the imapct of the laws in regards to his client's case. No Court could hold that competent counsel could have misssed the fact of this Caselaws impact on the Plea Bargain, when the Neal case comes from this Sixth Circuit itself, thus commands the District Court's ruling in the matter. Even had the District Court ignored the Neal caselaw, on Appeal this would have been overturned, thus the lack of any investigation into useful and parallel laws for his Client amounts to an abandonment of hid duty under the Fifth and Sixth Amendments.

Absent the argument of the 'prior felony' act of the Fleeing and Eluding charge by the State of Ohio that went nowhere in prosecution, the issue that it remains an Unconstitutitional problem to deny a frior felony a permanent, never recinded law, 18 U.S.C. §922(g)(1), "Possession" of a firearm, thus the ineffective assistance of his counsel is a fact, not a speculation. A Full Hearing is therefore required to answer the question of abandonment and the 'why' of the counsel's failure to thus investigate and discuss the possibility of argument on the 18 U.S.C. §922(g)(1) Offense, in light of the additional fact that this was law prior to the Sentencing, thus has no retroactivity argument to overcome. It was already good law at the time. It applies to this Petitioner and his counsel failed miserably to do his appointed duty to this client.

Raymond Williams #26858509
FCI Schuylkill
PoBox 759
minersville, PA
17954



RECEIVED

DEC 16 2024

KELLY L. STEPHENS, Clerk

Potter Stewart Courthouse
100 East 5th Street
Cincinnati, Ohio 45202

ATT:
Legal mail